UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDA PELLECHIA, : | |
|     Plaintiff, : | CIVIL ACTION NO. |
| : | 3:11-CV-1587 (JCH) |
| v. : | |
| : | |
| ONEWEST BANK, FSB and : | MARCH 18, 2013 |
| HUNT LEIBERT JACOBSON, PC, : | |
|     Defendants. : | |

**RULING RE: PLAINTIFF'S MOTION TO AMEND FINDINGS (Doc. No. 95)**

**I.     INTRODUCTION**

Plaintiff Linda Pellechia ("Pellechia") brings this action for alleged deceptive and unfair debt collection practices in connection with an underlying Connecticut state court foreclosure action ("Foreclosure Action") brought against Pellechia by defendant OneWest Bank, FSB ("OneWest") through their counsel, defendant Hunt Leibert Jacobson, PC ("Hunt Leibert").  Pellechia alleges that OneWest and Hunt Leibert knowingly made false, deceptive, and misleading representations throughout the course of the Foreclosure Action in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a.  Pellechia further alleges that OneWest is vicariously liable for the actions of Hunt Leibert, and that both OneWest and Hunt Leibert engaged in a civil conspiracy under Connecticut common law to conduct unlawful foreclosures.  Finally, Pellechia argues that OneWest should be judicially estopped from asserting (1) that it is the holder and owner of Pellechia's mortgage debt, and (2) that it is not a "debt collector" based on statements made by OneWest in both

the Foreclosure Action and in a separate class action lawsuit brought against OneWest in federal court in the Northern District of Illinois ("Class Action Suit").

OneWest and Hunt Leibert each filed a Motion to Dismiss as to all claims against them (Doc. Nos. 59, 60). The court issued a Ruling granting those motions ("Ruling Mots. Dismiss") (Doc. No. 91) for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pellechia then filed this Motion to Amend Findings pursuant to Rule 52(b) of the Federal Rules of Civil Procedure ("Mot. Amend Findings") (Doc. No. 95). For the following reasons, this Motion is **denied**.

## II. DISCUSSION

Pellechia's Motion to Amend Findings is a somewhat unusual document. It is not a conventional motion or memoranda so much as a list of eleven requests for additional findings or for clarification, only some of which are accompanied by any sort of explanation.

As a threshold matter, a motion filed pursuant to Rule 52 is inappropriate here. "Rule 52 applies only to cases in which a court issues factual findings following a trial on the merits." Walsh v. Law Offices of Howard Lee Schiff, P.C., No. 3:11-cv-1111 (SRU), 2013 WL 74967, *1 (D. Conn. Jan. 7, 2013) (citing Fed. R. Civ. P. 52(a)(1); Sugrue v. Derwinski, Nos. CV-90-1972, CV-91-2041, 1993 WL 742742, *2 (E.D.N.Y. Mar. 30, 1993)). "Indeed, Rule 52 makes explicit that 'the court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.'" Id. (citing Fed. R. Civ. P. 52(a)(3)). The Motions to Dismiss were decided pursuant to Rule 12(b)(6) and not following a trial.

The Ruling was not based on findings of fact, and this Motion is improper and is therefore denied. Id. at *2-*3.

The court further notes that, even if this motion were construed as a Motion for Reconsideration, it would be untimely. Id. at *2 (citing Villalobos v. N.Y. Div. of Parole, No. 09 Civ. 8431 (WHP), 2012 WL 4040218, *2 (S.D.N.Y. Sept. 13, 2012)). District of Connecticut Local Rule 7(c) states that a motion for reconsideration must be filed "within fourteen (14) days of the filing of the decision or order from which the relief is sought." D. Conn. Local R. Civ. P. 7(c)(1). Here, Pellechia filed this Motion 42 days after the Ruling on the Motions to Dismiss, and the Motion is therefore clearly untimely.

Even if the court were to construe Pellechia's Motion as a Motion for Reconsideration and consider it on the merits, it would still fail. The Second Circuit has held that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice. Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). That the court overlooked controlling law or material facts may also entitle a party to succeed on a motion to reconsider. Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (per curiam) ("To be entitled to reargument, a party must demonstrate that the Court overlooked

controlling decisions or factual matters that were put before it on the underlying motion.") (internal quotation marks omitted).

Pellechia raises eleven separate questions in his Motion, although some of them are linked, and not all of them are particularly specific regarding the type of objection they raise other than a generic request for consideration. Pellechia petitions for reconsideration of the court's dismissal of her claims under the FDCPA under the materiality standard, questioning the court's application of the materiality doctrine in general (Inquiry 3), in the context of this case as to claims that OneWest was deceitful as to its status as an owner or servicer of Pellechia's underlying debt (Inquiry 1), and in the context of the court's rationale that consumers represented by counsel do not need the added protection of the FDCPA (Inquiry 4). Pellechia also questions the court's determination that her CUTPA claims are barred under the Connecticut common law doctrine of litigation immunity (Inquiry 2).

Pellechia also questions the court's determination that her FDCPA and CUTPA claims are time-barred (Inquiry 5), and generically questions whether the court still adheres to its decision that the civil conspiracy claim should be dismissed (Inquiry 6), the estoppel claims are moot (Inquiry 7), and the dismissals in their entirety (Inquiry 11). Pellechia also questions the court's review of Pellechia's sur-reply (Inquiry 10) and its determination that Pellechia would not be granted further leave to amend her complaint (Inquiry 8, 9).

Regarding its dismissal of Pellechia's CUTPA claims, the court in its Ruling on the Motions to Dismiss determined that Connecticut's common law litigation privilege doctrine barred those claims. See Ruling Mots. Dismiss at 19. Pellechia has pointed to

a single case for the proposition that litigation immunity does not exist in the context of a CUTPA claim.  See Mot. Amend Findings at 4.  In Jackson v. R.G. Whipple, Inc., 225 Conn. 705 (Conn. 1993), the court considered, in part, whether a trial court was correct in dismissing a plaintiff's CUTPA claim against the attorney for her opponent in litigation.  Id. at 723.  The court reasoned, "Imposing liability under CUTPA on attorneys for their representation of a party opponent in litigation would not comport with a lawyer's duty of undivided loyalty to his or her client.  This consideration compels a conclusion that the trial court properly determined that the plaintiff did not have the requisite relationship with [the attorney] to allow her to bring suit against him under [CUTPA]." Id. at 729.  Not only does this holding not say what Pellechia claims that it does, but the Second Circuit recently endorsed reasoning similar to that used by this court in its Ruling.  See Gabriele v. Am. Home Mortg. Servicing, No. 12-985-cv, 2012 WL 5908601, *5 (2d Cir. 2012) ("Croog's alleged misconduct, consisting of the filing of court documents, was performed as part of its legal representation of Deutsche Bank in the state debt collection action, and did not consist of entrepreneurial work such as advertising and bill collection.  Therefore, it is immune from liability under the CUTPA."); see also Walsh v. Law Offices of Howard Lee Schiff, P.C., No. 3:11-cv-1111 SRU, 2012 WL 4372251, *7 (D. Conn. Sept. 24, 2012) ("[E]ven assuming that Walsh's CUTPA claims somehow lie outside of the FDCPA, those claims, arising under state law, are otherwise barred by the common-law litigation privilege.").  Even if her Motion were timely, Pellechia has clearly not pointed to any grounds supporting reconsideration as to this issue.

Next, Pellechia asserts that the Constitution requires that any legal determination regarding the materiality of a plaintiff's claims under the FDCPA is a factual issue for the

jury, and cannot be dealt with in a motion to dismiss.  Pellechia has cited no relevant or intervening case law in support.  Quite to the contrary, the Second Circuit recently upheld the dismissal of FDCPA claims in factually similar case in part under the materiality standard.  See Gabriele, 2012 WL 5908601 at *4 (noting that several circuits apply the materiality standard and holding, "Although statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA . . . , the false statements of which Gabriele complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim.") (internal citations omitted).  Were the court to take up the issue, it would deny reconsideration as to the application of the FDCPA materiality standard.

     Similarly, Pellechia challenges the court's consideration of the fact that Pellechia was largely represented by counsel when opposing counsel made its allegedly deceptive statements in its FDCPA analysis.  Again, Pellechia points to no case law that was not already raised in her opposition briefs and considered by the court in its Ruling.  And, again, the Second Circuit has since explicitly endorsed the consideration of whether an individual is represented by counsel in determining whether the plaintiff has stated a claim under the FDCPA.  Id. at *5 ("These filings, even if false, would not mislead the least sophisticated consumer, particularly represented by counsel, as here, into believing that he had already received an exhibit he had not received, that he had not filed counterclaims that he had filed three months before, or that he was not under consideration for a program he was in mediation to address. 'Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume

the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.'") (quoting Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002)).  As such, Pellechia has failed to demonstrate grounds for granting a motion for reconsideration as to this issue.

Lastly, Pellechia has challenged this court's determination that the specific misrepresentations alleged in her Complaint were not material under the FDCPA. Specifically, she implies that statements made by Hunt Leibert -- such as those in its original complaint filed against Pellechia in the underlying foreclosure action, that the mortgage in question was assigned to Pellechia, and those contained in a Motion to Correct that substituted IndyMac Federal Bank, FSB as the party plaintiff -- were materially false and misleading under the FDCPA.  Further, she claims that she never asserted that OneWest properly acquired the right to foreclose as a result of its servicing rights, and that OneWest never properly had the right to foreclose.  Pellechia implies by this assertion that, when the foreclosure action was initiated, and in subsequent filings within that foreclosure action, OneWest and Hunt Leibert were materially impeding her ability to challenge the debt against her, chiefly because OneWest had no authority to bring the action in the first place.

The Second Circuit has held that, "[C]ommunications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." Gabriele, 2012 WL 5908601 at *4.  Cases finding an FDCPA violation in this context have included discussions of misrepresentations such as a false statement that a borrower's debt was ineligible for bankruptcy, falsely representing that the collector

7

had the authority to initiate legal proceedings against the debtor, and falsely submitting affidavits attesting that debtors had been served with complaints in debt collection suits. Id. In Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993), the Second Circuit reversed a district court that found that letters sent to the plaintiff that falsely stated that the collection bureau had been given authority to initiate legal proceedings violated the FDCPA.  "[A]lthough the court felt that the language was not violative of the statute, the FDCPA specifically prohibits the threat to take any action 'that is not intended to be taken,' and the least sophisticated consumer would interpret this language to mean that legal action was authorized, likely and imminent.  Therefore, these statements are false, deceptive, and misleading within the meaning of the FDCPA." Id. (quoting 15 U.S.C. 1692e.  Pellechia argues that maintaining that OneWest properly initiated proceedings based on its interest in Pellechia's debt is clearly the type of claim that could mislead a putative-debtor as to the nature and legal status of the underlying debt.

As an initial matter, Pellechia's Second Amended Complaint includes the assertion, "OneWest acquired the servicing rights of the alleged loan after the alleged loan was determined to be contractually in default." See Second Amended Complaint at ¶ 272.  Pellechia argues that this statement was not intended to imply that OneWest actually acquired the servicing rights in question, but that it could not have acquired those rights because OneWest took over those rights from an entity that could not have properly acquired the debt in the first place and because the debt was owned by a securitized trust.  Moreover, Pellechia argues that, even if OneWest had servicing

8

rights, that fact is not the same as true ownership of the debt, and OneWest and Hunt Leibert's statements were still misleading.

However, even if Pellechia is right that these statements could cause Pellechia confusion about the validity or amount of her debt (to the extent that those statements were made prior to Pellechia retained counsel), or impeded her ability to challenge it, it is less clear that these statements would fall within the ambit of the FDCPA because they were made in the context of a state court proceeding that afforded Pellechia substantial procedural and substantive protections.  As the court in Walsh observed:

> First, as a matter of policy, the FDCPA's core purpose -- protecting unsophisticated consumers from unscrupulous debt collectors -- is not implicated by discovery motions and other pretrial proceedings in state court, a process that is already regulated by the court system and continually monitored by the presiding judge.  Cf. Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010) (noting that, in the bankruptcy context, "[w]hile the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers."); Derisme v. Hunt Leibert Jacobson P.C., 2012 WL 3000386, at *16 (D. Conn. July 23, 2012) ("Ultimately, the courts supervise and have the authority to discipline, including the power to revoke the license to practice law of any attorney who abuses the judicial process or otherwise fails to fulfill her or his professional responsibility. . . . In addition disciplinary proceedings may be initiated by a debtor harmed by the conduct of an unscrupulous or less than diligent attorney.") (citing Connecticut Practice Book, § 2-44).  Because litigants in state court already enjoy myriad procedural and substantive protections from fraudulent and deceptive practices, resort to the FDCPA is unnecessary.  See Derisme, 2012 WL 3000386, at *16.

Walsh, 2012 WL 4372251 at *5.

Even if the court were to deem these statements material – which they are not -- the claims are still time-barred under the FDCPA.  See Ruling Mots. Dismiss at 28. Pellechia has offered no case law that would call this Ruling into question.

As an additional matter, the court in Derisme determined that enforcers of security interests, such as a foreclosure, are not subject to the FDCPA.  See Derisme v.

9

Hunt Leibert Jacobson P.C., 880 F.Supp.2d 311, 326 (D. Conn. 2012) (acknowledging a split of authority).  That same court also observed, "[I]t does not appear that the purpose of the FDCPA is furthered by its application to a Connecticut judicial foreclosure action. While the FDCPA was designed to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a mortgagee is instead protected by the court system and Connecticut foreclosure law as was the case here." Id., at 329.  While the court need not reach these conclusions because the FDCPA claims are time barred, they do provide additional support for the dismissal of Pellechia's Motions to Dismiss where, as here, the "debt" in question is the security interest of Pellechia's foreclosed property.

Accordingly, even if the Motion for Reconsideration were timely filed, Pellechia has failed to satisfy her burden for the granting of that Motion.

And, further, based on these determinations, even if the court considered the Motion for Reconsideration, the court would adhere to its determinations that the civil conspiracy claims should be dismissed and the estoppel claims dismissed as moot.

Finally, the court turns to the issue of repleading.  Following a status conference held on March 5, 2012, the court issued a minute entry that plainly stated, "Plaintiff shall file final Amended Complaint by 3/19/2012." See Doc. No. 43.  Pellechia has already twice amended her complaint.  Further, she has demonstrated no extraordinary circumstances that would warrant vacating or setting aside the court's judgment in this case.  See Walsh, 2013 WL 74967 at *2.  To the extent that Pellechia's Motion is a Motion for Leave to File an Amended Complaint, it is denied.

10

### III.     CONCLUSION

For the foregoing reasons, Pellechia's Motion to Amend Findings (Doc. No. 95) is **denied**.  The case remains closed and the court's prior judgment is unaltered, and its prior Ruling supplemented by these additional reasons.

**SO ORDERED.**

Dated at New Haven, Connecticut this 18th day of March, 2013.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge